# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CALVIN McCUTCHAN, | |
| Plaintiff, | Case No. 1:20-cv-00561 (CPK) |
| vs. | |
| CORIANT OPERATIONS, INC., INFINERA CORPORATION, CORIANT 401(k) PLAN, and DOES 1-20, | |
| Defendants. | |

## SETTLEMENT AGREEMENT AND RELEASE

This Agreement is entered into on November 2, 2022, by and between Plaintiff, on behalf of himself, the Class, and the Plan, on the one hand, and Defendant, on the other hand, in consideration of the promises, covenants, and agreements herein described, and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate.

The capitalized terms used in the preceding sentence and in this Agreement are defined in Part I, below.

## I.      DEFINITIONS

**1.1.      "Action"** shall mean the lawsuit titled *Calvin McCutchan v. Coriant Operations, Inc., et al.* (Northern District of Illinois Case No. 1:20-cv-00561-CPK).

**1.2.      "Administration Costs"** shall mean: (a) all costs and expenses associated with the production and dissemination of the Notice; (b) all costs incurred by the Settlement Administrator in administering and effectuating this Settlement, including, but not limited to, the costs of obtaining contact and account information for Class Members and distributing the Settlement Amount, which

1

costs are necessitated by performance and implementation of this Agreement and any court orders relating thereto; and (c) all fees charged by the Settlement Administrator.

**1.3.** **"Agreement"** shall mean this Settlement Agreement and Release.

**1.4.** **"Attorney's Fees and Expenses"** shall mean any and all attorney's fees, costs, and expenses of Class Counsel for their past, present, and future work, efforts, and expenditures in connection with the Action and Settlement.

**1.5.** **"Case Contribution Award"** shall have the meaning ascribed to it in Section 7.1.

**1.6.** **"Class"** shall mean the class certified by the Court pursuant to Sections 2.1 and 2.2, consisting of all participants in the Plan, or their beneficiaries, who experienced a loss due to liquidation at market value of their GGF investments.

**1.7.** **"Class Counsel"** shall mean: Hugh D. Berkson of McCarthy, Lebit, Crystal & Liffman Co., L.P.A. and Alan L. Rosca of Rosca Scarlato LLC.

**1.8.** **"Class Member"** in the singular shall mean an individual member of the Class and "Class Members" in the plural shall mean all members of the Class.

**1.9.** **"Complaint"** shall mean the operative complaint in the Action at the relevant time, including, without limitation, the Second Amended Complaint when it has been filed with the Court.

**1.10.** **"Court"** shall mean the Honorable Charles P. Kocoras of the United States District Court for the Northern District of Illinois.

**1.11.** **"Defendant"** shall mean Infinera Optical Networks, Inc. (formerly known as Coriant Operations, Inc.).

**1.12.** **"Defendant's Counsel"** shall mean R. Bradford Huss, Clarissa A. Kang, and Dylan D. Rudolph of Trucker Huss, APC.

7070898v7

**1.13.** **"Defendant Released Parties"** shall mean Defendant, Infinera, and Prudential, and each of their predecessors, successors, shareholders, current and former parents, subsidiaries, affiliates, divisions, related companies, assigns, current and former officers, directors, employees, trustees, fiduciaries, committees (including, but not limited to, the Plan's Investment Committee and Administrative Committee, with the exception of the Independent Fiduciary), investment consultants, recordkeepers (including the Recordkeeper), investment managers, administrators, actuaries, agents, insurers, representatives, vendors, attorneys, descendants, dependents, beneficiaries, marital community, heirs, executors, representatives, and administrators of the entities and individuals identified in this Section 1.13.

**1.14.** **"Effective Date"** shall mean: (a) the date upon which the applicable period to appeal the Final Approval Order and Judgment has expired, if no appeal is taken during such period; or (b) if, during the appeals period, an appeal is taken from such Final Approval Order and Judgment, the date upon which all appeals, including further petitions for review, rehearing, or certiorari, and any proceedings resulting therefrom, have been finally disposed of, or the date upon which the applicable period to initiate all such further petitions or proceedings has expired. The Parties shall agree in writing when the Effective Date has occurred, and any dispute shall be resolved by the Court. It is expressly agreed by the Parties and their counsel that no Party intends this Section 1.14 or any other part of this Agreement to establish or acknowledge that anyone is entitled to or has the right to appeal from the Final Approval Order and Judgment.

**1.15.** **"Escrow Account"** shall mean an account at an established Financial Institution agreed upon by the Parties that is established for the deposit of the Settlement Amount and amounts relating to it, including, but not limited to, any interest earned on investment of the Settlement Amount.

7070898v7

**1.16.** **"Escrow Agent"** shall mean the entity approved by the Parties to act as escrow agent for any portion of the Settlement Amount deposited in or accruing in the Escrow Account pursuant to this Agreement.

**1.17.** **"Fee and Expense Application"** shall mean the petition to be filed by Class Counsel seeking approval of an award of Attorney's Fees and Expenses.

**1.18.** **"Final Approval Hearing"** shall mean the hearing to be held before the Court pursuant to Federal Rule of Civil Procedure 23(e) to determine whether the Agreement should receive final approval by the Court. The Parties will request that the Final Approval Hearing be scheduled for a date no earlier than ninety (90) calendar days after the entry of the Preliminary Approval Order.

**1.19.** **"Final Approval Order and Judgment"** shall mean a final order and judgment entered by the Court after the Final Approval Hearing granting its approval of the Settlement.

**1.20.** **"Financial Institution"** shall mean Huntington Bank, the institution at which the Escrow Account is established.

**1.21.** **"FAC"** shall mean Plaintiff's First Amended Complaint, which is docket entry 28 in the Action.

**1.22.** **"GGF"** shall mean the Gibraltar Guaranteed Fund offered by PRIAC and included as one of the Plan's investment options during the relevant period.

**1.23.** **"Independent Fiduciary"** shall mean the independent fiduciary that Defendant selects to review the Settlement independently on behalf of the Plan (subject to the consent of Plaintiff, which consent shall not be unreasonably withheld).

**1.24.** **"Independent Fiduciary Fees and Costs"** shall mean all fees, costs, and expenses of the Independent Fiduciary. The Independent Fiduciary Fees and Costs shall be paid from the

Settlement Fund after such funds are deposited with the Escrow Agent and upon receipt of an invoice from the Independent Fiduciary.

**1.25.** **"Infinera"** shall mean Infinera Corporation.

**1.26.** **"Net Settlement Fund"** shall mean the Settlement Fund minus all Settlement Administration Costs, Independent Fiduciary Fees and Costs, Attorney's Fees and Expenses, Case Contribution Award, Taxes and Tax-Related Costs, and any other deductions and payments from the Settlement Fund under the terms of this Agreement or as the Court may allow.

**1.27.** **"Notice"** shall mean the notice to be provided directly to Class Members pursuant to Section 2.5 and made available on the Settlement Website and the website of Class Counsel.

**1.28.** **"Parties"** in the plural shall mean Plaintiff and Defendant and "Party" in the singular shall mean one of the Parties.

**1.29.** **"PB&T"** shall mean Prudential Bank & Trust, FSB.

**1.30.** **"Plaintiff"** shall mean Plaintiff Calvin McCutchan, individually and on behalf of the Class and the Plan.

**1.31.** **"Plan"** shall mean the Coriant 401(k) Plan.

**1.32.** **"Plan of Allocation"** shall mean the framework for allocating the Settlement Fund that is approved by the Court.

**1.33.** **"Preliminary Approval Order"** shall mean an order entered by the Court preliminarily approving the Settlement, pursuant to Section 2.2.

**1.34.** **"PRIAC"** shall mean Prudential Retirement Insurance and Annuity Company.

**1.35.** **"Prudential"** shall mean Prudential Financial, Inc. and each of its affiliates, including but not limited to PRIAC and PB&T.

**1.36.** **"Recordkeeper"** shall mean Prudential, with respect to the Plan, and/or Fidelity Management Trust Company, with respect to the Infinera 401(k) Plan.

1.37. **"Released Claims"** shall be any and all actual or potential claims (including any Unknown Claims), actions, causes of action, demands, obligations, losses, or liabilities (including claims for attorney's fees, expenses, or costs), for monetary, injunctive, and any other relief against the Defendant Released Parties through the date the Court enters the Final Approval Order and Judgment arising out of or in any way related to: (a) the conduct alleged in or that could have been alleged in the Complaint by any Class Member, whether or not the conduct was actually included as claims for relief in the Complaint; (b) PRIAC's termination of the Plan's participation in the GGF; (c) the liquidation of the Plan's investment in the GGF by PRIAC; and (d) the approval by the Independent Fiduciary of the Settlement. The Released Claims shall not include claims to enforce the covenants or obligations set forth in this Agreement. With respect to the Released Claims, it is the intention of the Plaintiff and all other Class Members and the Plan to expressly waive to the fullest extent of the law: (a) the provisions, rights, and benefits of **Section 1542 of the California Civil Code, which provides that "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party"**; and (b) the provisions, rights, and benefits of any similar statute or common law of any other jurisdiction that may be, or may be asserted to be, applicable.

1.38. **"Settlement"** shall mean the compromise and resolution embodied in this Agreement.

1.39. **"Settlement Administrator"** shall mean Strategic Claims Services.

1.40. **"Settlement Amount"** shall mean one million dollars ($1,000,000.00) that Defendant will pay or cause to be paid to the Settlement Fund, which shall represent Defendant's entire monetary obligations with regard to the Settlement.

6

7070898v7

**1.41.** **"Settlement Fund"** shall have the meaning set forth in Section 3.1(b).

**1.42.** **"Settlement Website"** shall have the meaning set forth in Section 2.6.

**1.43.** **"Taxes"** shall have the meaning set forth in Section 3.1(i).

**1.44.** **"Tax-Related Costs"** shall have the meaning ascribed to it in Section 3.1(i).

**1.45.** **"Unknown Claims"** shall mean any Released Claims that Plaintiff or any Class Members do not know or suspect to exist at the time of the release of the Defendant Released Parties, including claims which, if known by them, might have affected their settlement with Defendant and release of the Defendant Released Parties, or might have affected their decision not to object to this Settlement. Plaintiff or any Class Member may later discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiff and all Class Members, upon the date of the Court's entry of the Final Approval Order and Judgment, shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have, fully, finally, and forever settled and released all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiff and all Class Members shall be deemed by operation of the Final Approval Order and Judgment to have acknowledged that the foregoing waiver was bargained for and is a key element of the Settlement of which their release and waiver of Unknown Claims is a part.

## II. SETTLEMENT APPROVAL

**2.1.** ***Motion for Leave to Amend FAC.*** No later than November 3, 2022, Plaintiff shall move the Court for leave to file a Second Amended Complaint and amend his Class claims such that

the putative Class will be a non-opt out Class and will consist of: All participants in the Plan who experienced a loss due to liquidation at market value of their GGF investments, any beneficiary of a deceased person who was such a participant in the Plan, and any alternate payee in the case of a person who was such a participant in the Plan and whose account in the Plan was subject to a qualified domestic relations order ("QDRO"). Excluded from the Class are Defendant's current officers and directors, and all individuals who were members of the Plan's Investment Committee or Administrative Committee at any time from July 23, 2018, through October 15, 2018. Defendant will not object to Plaintiff's motion for leave to amend under the terms of this Section 2.1.

   **2.2.   *Motions for Preliminary Approval and for Class Certification for Settlement Purposes Only*.**   No later than November 3, 2022, Plaintiff shall move the Court for preliminary approval of the Settlement and for certification of the Class for settlement purposes only. Defendant will not oppose Plaintiff's motions for preliminary approval of the Settlement and for class certification for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1) or (b)(2) but reserves the right to make submissions related to the motions. If the Court does not issue the Final Approval Order and Judgment, then no Class shall be deemed to have been certified by or as a result of this Agreement, Defendant shall not be deemed to have admitted the propriety of certification of the Class under any provisions of Federal Rule of Civil Procedure 23, and the Action shall for all purposes revert to its status as of the day immediately prior to November 2, 2022.

   **2.3.   *Rights of Exclusion.***   Class Members shall not be permitted to exclude themselves from the Class.

   **2.4.   *Right to Object.***   Class Members shall be permitted to object to the Settlement. Requirements for filing an objection shall be set forth in the Preliminary Approval Order and in the Notice.

**2.5.** *Class Notice.* Within thirty (30) calendar days of the entry of the Preliminary Approval Order or as may be modified by the Court, the Settlement Administrator shall send the Notice by electronic mail (if available) and first-class mail to the Class Members. The Notice shall be sent to the last known electronic mail address and last known mailing address of the Class Members that are reasonably obtainable from Infinera, and/or the Recordkeeper. The Settlement Administrator shall update mailing addresses through the National Change of Address database before mailing (with all returned mail skip-traced and promptly re-mailed).

**2.6.** *Settlement Website.* Within thirty (30) calendar days of the entry of the Preliminary Approval Order and no later than the first date that the e-mailing or the mailing of the Notice occurs, or as may be extended by the Court on application of the Parties, the Settlement Administrator shall establish a case landing page on its website containing the Notice and this Agreement and its exhibits (the "Settlement Website"). The Notice will identify the web address of the Settlement Website.

**2.7.** *Approval of Settlement by the Independent Fiduciary.*

    **a)** The Independent Fiduciary shall review the Settlement and provide any requested authorizations, including the authorization required by Employee Retirement Income Security Act of 1974, as amended ("ERISA") Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632 (Dec. 31, 2003), as amended by 75 Fed. Reg. 33830 (June 15, 2010). The Parties shall comply with reasonable requests for information made by the Independent Fiduciary.

    **b)** At least thirty (30) calendar days prior to the Final Approval Hearing, the Independent Fiduciary shall have approved and authorized in writing the Settlement and given a release in its capacity as fiduciary of the Plan for and on behalf of the Plan, on the terms set forth in Section 5.1, in accordance with Prohibited Transaction Class Exemption 2003-39. Should the Independent Fiduciary fail to approve and authorize the Settlement or

9

fail to give a release on behalf of the Plan, the Agreement shall be terminable, pursuant to Section 8.2.

**2.8.** ***Class Action Fairness Act Notice.*** The Settlement Administrator, on behalf of Defendant and at Defendant's cost, shall comply with the notice requirements of 28 U.S.C. § 1715, and pursuant to the Preliminary Approval Order, shall file a notice with the Court confirming compliance at least thirty (30) calendar days prior to the Final Approval Hearing.

**2.9.** ***Motion for Final Approval.*** Plaintiff shall move the Court for final approval of the Settlement no later than the deadline set by the Court in the Preliminary Approval Order, or as may be extended by the Court. On or after the date set by the Court for the Final Approval Hearing pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court shall determine, among other things: (a) whether to enter the Final Approval Order and Judgment finally approving the Settlement; and (b) what, if any, Case Contribution Awards and Attorney's Fees and Expenses should be awarded to Plaintiff and Class Counsel, respectively, pursuant to Sections 7.1 and 7.2 of this Agreement.

## III. PAYMENTS TO THE CLASS

**3.1.** ***The Settlement Amount.***

**a)** In consideration of all of the promises and agreements set forth in this Agreement, Defendant will pay, or cause to be paid, the Settlement Amount specified in Section 1.40. None of the other Defendant Released Parties shall have any obligation to contribute financially to this Settlement. It is understood and agreed by the Parties that, by paying the Settlement Amount, Defendant does not agree with or in any way admit and shall not be deemed to agree with or in any way admit, any of Plaintiff's or Class Counsel's theories regarding Defendant's alleged liability in the Action, including that any of Defendant's prior or existing actions or practices are in violation of any federal or state laws, statutes, or regulations.

7070898v7

**b)**     Defendant shall pay, or cause to be paid, the Settlement Amount as set forth in section 1.40 in two segments, and the total funding, in the aggregate, together with any interest and investment earnings thereon, shall constitute the "Settlement Fund." First, Defendant shall pay, or cause to be paid, Fifty Thousand dollars ($50,000.00) of the Settlement Amount, with that amount to be deposited by wire transfer into the Escrow Account within fifteen (15) calendar days of the entry of the Preliminary Approval Order to fund any Administration Costs and Independent Fiduciary Fees and Costs that arise before the Court's entry of the Final Approval Order and Judgment. Second, Defendant shall pay, or cause to be paid, the remaining portion of the Settlement Amount, to be deposited by wire transfer into the Escrow Account within fifteen (15) calendar days following the Court's entry of the Final Approval Order and Judgment, subject to the provisions of Section 8.4.

**c)**     The Settlement Fund shall be used solely for the purposes set forth in Section 3.1(j).

**d)**     Subject to Court approval and oversight, the Escrow Account will be controlled by the Settlement Administrator. Neither Defendant, Defendant's Counsel, the Defendant Released Parties, Plaintiff, nor Class Counsel shall have any liability whatsoever for the acts or omissions of the Settlement Administrator. The Settlement Administrator shall not disburse the Settlement Amount or any portion of the Settlement Fund except as provided for in this Agreement, by an order of the Court, or with prior written agreement of Class Counsel and Defendant's Counsel.

**e)**     The Settlement Administrator is authorized to execute transactions on behalf of Class Members that are consistent with the terms of this Agreement and with orders of the Court.

7070898v7

**f)**     All funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until the funds are distributed in accordance with this Agreement.

**g)**     The Settlement Administrator may, to the extent practicable and prudent, invest the Settlement Fund in discrete and identifiable instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  The Settlement Administrator shall maintain records identifying in detail each instrument in which the Settlement Fund or any portion thereof has been invested and identifying the precise location (including any safe deposit box number) and form of holding of each such instrument.  Neither the Settlement Fund nor any portion thereof shall be commingled with any other monies in any instruments.  Any cash portion of the Settlement Fund not invested in instruments of the type described in the first sentence of this Section 3.1(g) shall be maintained by the Settlement Administrator, and not commingled with any other monies, in the Escrow Account.  The Settlement Administrator and Class Members shall bear all risks related to investment of the Settlement Fund.

**h)**     The Settlement Fund is intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.  The Settlement Administrator, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Settlement Fund Escrow Account and paying from the Settlement Fund any Taxes owed with respect to the Settlement Fund.  Defendant agrees to provide the Settlement Administrator with the statement described in U.S. Treasury Regulation §1.468B-3(e).  Neither Defendant,

12

Defendant's Counsel, the Defendant Released Parties, Plaintiff, nor Class Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any taxes with respect to the Escrow Account.

      **i)**      All taxes on the income of the Settlement Fund ("Taxes") and expenses and costs incurred in connection with the taxation of the Settlement Fund (including expenses of tax attorneys and accountants) ("Tax-Related Costs") shall be timely paid by the Settlement Administrator out of the Escrow Account.

      **j)**      The Settlement Fund will be used to pay the following amounts associated with the Settlement:

          (1)      Compensation to Class Members determined in accordance with Section 3.2;

          (2)      Any Case Contribution Award approved by the Court;

          (3)      All Attorney's Fees and Expenses approved by the Court;

          (4)      Independent Fiduciary Fees and Costs;

          (5)      Administration Costs; and

          (6)      Taxes and Tax-Related Costs.

**3.2.** *Distribution to Class Members.*

      **a)**      The Net Settlement Fund will be distributed to Class Members in accordance with the Plan of Allocation.

      **b)**      Notwithstanding anything else in this Agreement, any revisions to the Plan of Allocation that would increase the Settlement Amount or require Defendant, Infinera, or their affiliates to incur additional expenses or costs not required under this Agreement or to provide data not reasonably available shall be deemed a material alteration of this Agreement and shall entitle Defendant, at its election, to terminate the Agreement.

13

       c)     Class Members who receive a check from the Settlement Administrator under the Plan of Allocation must cash their checks within ninety (90) calendar days of issuance. If they do not do so, the checks will be void, and the Settlement Administrator shall be instructed to return any such funds to the Settlement Fund pursuant to Section 3.4. This limitation shall be printed on the face of each check. Notwithstanding these requirements, the Settlement Administrator shall have the authority to reissue checks to Class Members where it determines there is good cause to do so, provided that doing so will not compromise the Settlement Administrator's ability to implement the Plan of Allocation. The voidance of checks shall have no effect on the Class Members' release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect.

    **3.3.**   *Responsibility for Taxes on Distribution.* Each Class Member who receives a payment under this Agreement shall be fully and ultimately responsible for payment of any and all federal, state, or local taxes resulting from or attributable to the payment received by such person. Each Class Member shall hold Defendant, Defendant's Counsel, the Defendant Released Parties, Class Counsel, and the Settlement Administrator harmless from: (a) any tax liability, including without limitation penalties and interest, related in any way to payments or credits under the Agreement, and (b) the costs (including, without limitation, fees, costs and expenses of attorneys, tax advisors, and experts) of any proceedings (including, without limitation, any investigation, response, and/or suit), related to such tax liability.

    **3.4.**   *Treatment of Undistributed Funds and Uncashed Checks.* If any of the Net Settlement Fund remains by reason of uncashed checks, or otherwise, after the Settlement Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, then any balance remaining in the Net Settlement Fund ninety (90) calendar days after the initial

14

distribution of such funds shall be used: (i) first, to pay any amounts mistakenly omitted from the initial distribution to Class Members; (ii) second, to pay any additional Notice and Administrative Expenses incurred in administering the Settlement; and (iii) finally, to make a second distribution to Class Members who cashed their checks from the initial distribution and who would receive at least $10.00 from such second distribution, after payment of the estimated costs or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, unless the costs of such second distribution exceeds the amount to be distributed. If three (3) months after such second distribution, if undertaken, or if such second distribution is not undertaken, any funds shall remain in the Net Settlement Fund after the Settlement Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in this Settlement cash their checks, any funds remaining in the Net Settlement Fund shall be donated to a non-profit charitable organization(s) selected by Class Counsel and approved by the Court.

    **3.5.** *Administration Costs.* The Administration Costs shall be paid from the Settlement Fund. The Settlement Administrator will reserve from the Settlement Fund the estimated Administration Costs. Within thirty (30) days after disbursement of the entire Settlement Fund as provided by this Agreement and the Plan of Allocation, the Settlement Administrator shall provide Plaintiff's counsel with a final report of the settlement administration and a detailed accounting of any Administration Costs.

    **3.6.** *Entire Monetary Obligation.* Notwithstanding anything else in this Agreement, in no event shall Defendant be required to pay any amounts under this Agreement or otherwise, other than the Settlement Amount, as specified in Section 1.40. Aside from Defendant's obligation to pay or cause to be paid the Settlement Amount, as specified in Section 1.40, none of the Defendant Released Parties shall be required to pay any amounts under this Agreement or otherwise related to the Settlement or Action.

7070898v7

## IV.    SETTLEMENT ADMINISTRATION

**4.1.**    Defendant shall use reasonable efforts to cause Infinera and the Recordkeeper to provide to the Settlement Administrator, within twenty (20) calendar days of the entry of the Preliminary Approval Order, the participant data reasonably sufficient to effectuate the Notice, implement the Plan of Allocation, and distribute the Settlement Fund.  Said data shall be delivered in a format reasonably useable by the Settlement Administrator.  Defendant shall not otherwise be obligated to assist with effecting Notice, implementation of the Plan of Allocation, or distribution of the Settlement Fund.

**4.2.**    The Settlement Administrator shall administer the Settlement subject to the supervision of Class Counsel and the Court as circumstances may require.

**4.3.**    Defendant, Defendant's Counsel, and the Defendant Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to:

      **a)**    Any act, omission, or determination of the Settlement Administrator, Class Counsel, or designees or agents of Class Counsel or the Settlement Administrator;

      **b)**    The management, investment, or distribution of the Settlement Fund; or

      **c)**    The determination, administration, calculation, or payment of any claims asserted against the Settlement Fund.

**4.4.**    The Settlement Administrator shall provide to Class Counsel upon request, a full accounting of all expenditures made in connection with the Settlement, including Administration Costs (as noted in Section 3.5), and any distributions from the Settlement Fund.

**4.5.**    The Settlement Administrator shall provide such information as may be reasonably requested by Plaintiff, Defendant, Defendant's Counsel, or Class Counsel relating to administration of this Agreement.

7070898v7

## V.    RELEASES, COVENANTS, AND JUDICIAL FINDINGS

**5.1.    *Release of Defendant Released Parties.*** Subject to Part VIII of this Agreement, upon and through the date of the Court's entry of the Final Approval Order and Judgment, Plaintiff and each Class Member (on behalf of themselves and their current and former beneficiaries, heirs, descendants, dependents, marital community, administrators, executors, representatives, predecessors, successors, and assigns), and the Plan (by and through the Independent Fiduciary pursuant to Section 2.7(b)) absolutely and unconditionally release and forever discharge the Defendant Released Parties from all Released Claims.

**5.2.    *Covenant Not to Sue.*** Upon and through the date of the Court's entry of the Final Approval Order and Judgment, Plaintiff, Class Members, and Class Counsel (on behalf of themselves and any successors-in-interest) shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have, fully, finally, and forever released, relinquished, and discharged, and shall forever be enjoined from prosecution of the Defendant Released Parties from any and all Released Claims.

Plaintiff and Class Members further agree that, outside of the Action, none of them will institute, maintain, prosecute, sue, or assert in any claim, action, or proceeding, whether individually, in a representative capacity, or on behalf of the Plan, against the Defendant Released Parties based on conduct subsequent to, or any liability or damages claimed to arise or occur after, the date of the Court's entry of the Preliminary Approval Order, that were asserted or could have been asserted in the Complaint arising out of the facts and circumstances giving rise to this Action, the settlement thereof, and/or the administration of said settlement.

Should Plaintiff or Class Members breach the terms of this Section 5.2, the Defendant Released Parties may recover from the breaching persons any reasonable attorney's fees and costs that any of them may incur to enforce the provisions of this Section 5.2.

7070898v7

**5.3.** ***Defendant's Releases of Others.*** Upon and through the date of the Court's entry of the Final Approval Order and Judgment, Defendant (on behalf of itself and any successors-in-interest) shall be deemed to have, and by operation of the Final Approval Order and Judgment, shall have, fully, finally, and forever released, relinquished, and discharged, and shall forever be enjoined from prosecution of the Plaintiff, Class Members, and Class Counsel from any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorney's fees and costs, whether under local, state, or federal law, whether by statute, contract, common law or equity, whether brought in an individual, representative or any other capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, relating to the Action.

**5.4.** ***Taxation of Settlement Fund.*** Plaintiff and Class Members acknowledge that the Defendant Released Parties have no responsibility for any taxes due on funds deposited in or distributed from the Settlement Fund, or on any funds that Plaintiff, Class Members, or Class Counsel receive from the Settlement Fund, including through any Case Contribution Awards or Attorney's Fees and Expenses award, as applicable.

**5.5.** ***Use of Settlement Administrator Information.*** Class Counsel, Defendant's Counsel, and Defendant shall have access to information held by the Settlement Administrator given that such information is necessary to administer this Settlement.

**5.6.** ***Use of Information.*** Class Counsel and their agents, as well as the Settlement Administrator, shall use any confidential information provided by Defendant, Infinera, Prudential, or the Recordkeeper pursuant to this Agreement solely for the purpose of providing the Notice and administering this Settlement and for no other purpose. Such confidential information shall be marked "Confidential" and treated as such.

## VI.    REPRESENTATIONS AND WARRANTIES

**6.1.    *Parties' Representations and Warranties.*** The Parties, and each of them, represent and warrant as follows, and each Party acknowledges that each other Party is relying on these representations and warranties in entering into this Agreement:

**a)**    The Parties have diligently investigated the claims in this Action; that they are voluntarily and knowingly entering into this Agreement as a result of arm's-length negotiations among their counsel; that in executing this Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently-selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof; and that, except as provided in this Agreement, they have not been influenced to any extent whatsoever in executing this Agreement by any representations, statements, or omissions pertaining to any of the foregoing matters by any Party or by any person representing any Party. Each Party assumes the risk of mistake as to facts or law;

**b)**    The Parties have carefully read the contents of this Agreement and this Agreement is signed freely by each signatory executing the Agreement on behalf of the applicable Party. The Parties, and each of them, further represent and warrant to each other that they have made such investigation of the facts pertaining to this Settlement, this Agreement, and all of the matters pertaining thereto, as they deem necessary;

**c)**    Plaintiff has not assigned or otherwise transferred any interest in any Released Claim against any Defendant Released Parties, and that he shall not assign or otherwise transfer any interest in any Released Claims; and

**d)** Plaintiff, on behalf of himself and the Class, will have no surviving claims or causes of action against any of the Defendant Released Parties for any of the Released Claims, from and after the Effective Date.

**6.2.** ***Signatories' Representations and Warranties.*** Each counsel or other person executing this Agreement on behalf of any Party represents and warrants that such person has the authority to do so.

## VII.   MONETARY PAYMENTS

**7.1.** ***Case Contribution Award.***

**a)** Plaintiff Calvin McCutchan may seek a Case Contribution Award subject to Court approval ("Case Contribution Award"). Any Case Contribution Award approved by the Court shall be paid within thirty (30) calendar days of the Effective Date. The Case Contribution Award shall be paid by the Settlement Administrator solely out of the Settlement Fund and shall be deducted (to the extent approved by the Court) from the Settlement Fund on or after the Effective Date and prior to the distribution of the Settlement Fund to the Class Members. Plaintiff shall also be entitled to distribution under this Settlement pursuant to Section 3.2 as a Class Member.

**b)** Notwithstanding any other provision of this Agreement to the contrary, the procedure for and the allowance or disallowance (in whole or in part) by the Court of any application for the Case Contribution Award shall be considered by the Court separately from its consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to the Case Contribution Award, or any appeal of any order relating thereto, shall not operate to terminate or cancel this Agreement or be deemed material thereto.

7070898v7

c) Other than the Settlement Amount, Defendant shall have no obligations whatsoever with respect to any Case Contribution Award to Plaintiff, which shall be payable solely out of the Settlement Fund.

**7.2.** *Attorney's Fees and Expenses.*

a) Class Counsel intends to submit a Fee and Expense Application seeking an award of attorney's fees, plus reasonable litigation expenses, at the appropriate time. Any amount awarded by the Court in response to such Fee and Expense Application shall be paid by the Settlement Administrator solely out of the Settlement Fund and shall be deducted (to the extent approved by the Court) from the Settlement Fund and paid to Class Counsel within thirty (30) calendar days of the Effective Date.

b) Notwithstanding any other provision of this Agreement to the contrary, the procedure for and the allowance or disallowance (in whole or in part) by the Court of the Fee and Expense Application to be paid out of the Settlement Fund shall be considered by the Court separately from its consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to the award of Attorney's Fees and Expenses, or any appeal of any order relating thereto, shall not operate to terminate or cancel this Agreement or be deemed material thereto.

c) Other than the Settlement Amount, Defendant shall have no obligations whatsoever with respect to any Attorney's Fees and Expenses incurred by Class Counsel, which shall be payable solely out of the Settlement Fund.

## VIII. CONTINGENCIES, EFFECT OF DISAPPROVAL, OR TERMINATION OF SETTLEMENT

**8.1.** This Agreement and the Settlement shall terminate and be cancelled if, within twenty (20) calendar days after any of the following events, one of the Parties provides all other Parties with written notification of an election to terminate the Settlement, provided that the Parties shall

first negotiate in good faith to attempt to cure any deficiency identified by the Court:

      **a)**      The Court declines to grant Plaintiff leave to amend the FAC as described under Section 2.1; or

      **b)**      The Court declines to provide preliminary approval of this Agreement, certify the Class as described under Section 2.2, or enter the Preliminary Approval Order in the form mutually agreed upon by counsel for Plaintiff and Defendant and submitted to the Court by counsel for Plaintiff, or the Preliminary Approval Order is vacated, reversed, or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date; or

      **c)**      The Court declines to provide final approval of this Agreement, or declines to enter, or materially modifies the contents of the Final Approval Order and Judgment Order in the form mutually agreed upon by counsel for Plaintiff and Defendant and submitted to the Court by counsel for Plaintiff; or

      **d)**      The Court's Final Approval Order and Judgment is vacated, reversed, or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date; or

      **e)**      The Effective Date does not get triggered for some other reason by December 31, 2024.

    **8.2.**    For purposes of this Agreement, no order of the Court, or modification or reversal on appeal of any order of the Court, solely concerning the administration of the Settlement or the persons performing such administrative functions, or the amount or award of any Attorney's Fees and Expenses or Case Contribution Award shall constitute grounds for cancellation or termination of the Agreement, provided that such order, modification, or reversal does not increase Defendant's

total financial obligation under this Settlement or impose injunctive relief against any Defendant Released Parties.

This Agreement and the Settlement shall terminate and be cancelled at the sole election of Defendant or Infinera if the Independent Fiduciary disapproves or otherwise does not authorize the Settlement or refuses to approve the release on behalf of the Plan of the Released Claims. Alternatively, Defendant or Infinera has the option to waive this condition. Unless otherwise agreed by the Parties, either option is to be exercised in writing within the earlier of (a) ten (10) business days after the Parties' receipt of the Independent Fiduciary's written determination under Section 2.7, or (b) three (3) business days prior to the date set for the Final Approval Hearing.

**8.3.** This Agreement and the Settlement shall terminate and be cancelled if: (a) any federal or state authorities object to, or request material modifications to, the Agreement; and (b) within twenty (20) business days after the deadline set in the Preliminary Approval Order for such objections or requests, or within twenty (20) business days of receiving any such objection or request, if later, Defendant or Infinera provide written notice of their election to terminate the Settlement provided that the Parties shall first negotiate in good faith to attempt to cure any deficiency identified by such objection or request.

**8.4.** If, for any reason, this Agreement is terminated or fails to become effective, then:

**a)** The Parties shall be deemed to have reverted to their respective status in the Action as of November 2, 2022. The Action shall then resume proceedings in the Court, and, except as otherwise expressly provided in this Agreement, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered.

**b)** Class Counsel and Defendant's Counsel shall within ten (10) business days after the date of termination of the Agreement jointly notify the Financial Institution in writing to return to Defendant, or its designee or designees, the full amount contained in the

Settlement Fund, with all interest and income earned thereon, after deduction of any amounts earlier disbursed and/or incurred by the Settlement Fund as of the termination, and direct the Financial Institution to effect such return within fourteen (14) calendar days after such notification. Prior to the return of amounts contemplated by this Section 8.4(b), the Financial Institution shall fully and finally fulfill and set aside for any and all tax obligations of the Settlement Fund as set forth in Section 3.1(i). Defendant shall have no past, present, or future liability whatsoever for any such tax obligations.

      **c)**      Part VIII of this Agreement, and its provisions, shall survive any termination of this Agreement and the Settlement, as will Sections 3.3, 4.3, 5.4, and 5.6.

## IX.   NO ADMISSION OF WRONGDOING

    **9.1.**   *No Admission of Wrongdoing*. The Parties understand and agree that this Agreement embodies a compromise settlement of disputed claims, and that nothing in this Agreement, including the furnishing of consideration for this Agreement, shall be deemed to constitute any finding or admission of any wrongdoing or liability by any of the Defendant Released Parties, or give rise to any inference of wrongdoing or liability in the Action or any other proceeding. This Agreement and the consideration provided hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal or factual. Defendant Released Parties specifically deny any such liability or wrongdoing, and Defendant states that it is entering into the Agreement solely to eliminate the burden and expense of protracted litigation. Further, Plaintiff has concluded that the terms of this Agreement are fair, reasonable, and adequate to the Plan, himself, and the Class given, among other things, the inherent risks, difficulties, and delays in complex ERISA lawsuits, like the Action. Neither the fact of this Settlement nor the terms of this Agreement shall be used, offered, or received in evidence in any

action or proceeding for any purpose, except in an action or proceeding to enforce this Agreement, whether affirmatively or defensively.

## X.    MISCELLANEOUS

**10.1.    *Waiver.*** The provisions of this Agreement may be waived only by an instrument in writing executed by the waiving Party. The waiver by any Party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

**10.2.    *Dispute Resolution.*** If a dispute arises regarding compliance with any of the provisions of this Agreement, it shall first be mediated in non-binding mediation by a mediator mutually agreeable to the Parties. The cost of any mediation shall be split equally between Plaintiff, on the one hand, and Defendant, on the other hand. If mediation is unsuccessful, then any remaining disputes regarding compliance with this Agreement shall be heard only by this Court.

**10.3.    *Entire Agreement.*** This Agreement is the entire agreement among the Parties, and it supersedes any prior agreements, written or oral, between the Parties. This Agreement cannot be altered, modified, or amended except through a writing executed by either (a) Plaintiff and Defendant, or (b) Class Counsel and Defendant's Counsel.

**10.4.    *Construction of Agreement.*** This Agreement shall be construed to effectuate the intent of the Parties to resolve all disputes encompassed by the Agreement. The Parties have participated in the drafting of this Agreement, and any ambiguity shall not be resolved by virtue of a presumption in favor of any Party. The Agreement was reached at arm's length by the Parties represented by counsel. Neither of the Parties shall be considered to be the drafter of this Agreement or any provision hereof for the purposes of any statute, case law, or rule of interpretation or construction.

7070898v7

**10.5.** *Principles of Interpretation.* The following principles of interpretation apply to this Agreement:

a) The headings of this Agreement are for reference only and do not affect in any way the meaning or interpretation of this Agreement.

b) Definitions apply to the singular and plural forms of each term defined.

c) Definitions apply to the masculine, feminine, and neutral genders of each term defined.

d) References to a person are also to the person's permitted successors and assignees.

e) Whenever the words "include," "includes," or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

**10.6.** *Executed in Counterparts.* This Agreement may be executed in counterparts, each of which shall be considered the same as if a single document had been executed. The Agreement shall be deemed executed by all Parties when such counterparts have been signed by each of the Parties' counsel and delivered to the other Parties. Counterpart copies of signature pages, whether delivered in original, by electronic mail in .pdf format, by DocuSign, or by facsimile, taken together, shall all be treated as originals and binding signatures.

**10.7.** *Notices.* Unless otherwise provided herein, any notice, request, instruction, application for Court approval, or application for Court order sought in connection with the Agreement, shall be in writing and delivered personally or sent by certified mail or overnight delivery service, postage prepaid, with copies by facsimile or e-mail to the attention of Class Counsel or Defendant's Counsel, as applicable (as well as to any other recipients that a court may specify). Parties may change the person(s) to whom such notices should be directed by giving

notice pursuant to this Section 10.7. As of the date hereof, the respective representatives are as follows:

> **For Defendant:**
>
> > **R. Bradford Huss**
> > **Clarissa A. Kang**
> > TRUCKER HUSS, APC
> > 135 Main Street, 9th Floor
> > San Francisco, CA 94105
> > Telephone:    (415) 788-3111
> > Email:          bhuss@truckerhuss.com
> >                     ckang@truckerhuss.com
>
> **For Plaintiff:**
>
> > **Hugh D. Berkson**
> > McCARTHY, LEBIT, CRYSTAL
> > & LIFFMAN CO., L.P.A.
> > 1111 Superior Avenue East, Suite 2700
> > Cleveland, OH 44114
> > Telephone:    (216) 696-1422
> > Email:          hdb@mccarthylebit.com
>
> > **Alan L. Rosca**
> > ROSCA SCARLATO LLC
> > 23250 Chagrin Blvd., Suite 100
> > Beachwood, OH 44122
> > Telephone:    216-946-7070
> > Email:          arosca@rscounsel.law

**10.8.    *Extensions of Time.*** The Parties may agree, subject to the approval of the Court where required, to reasonable extensions of time to carry out the provisions of the Agreement.

**10.9.    *Governing Law.*** Except to the extent covered by ERISA, this Agreement shall be governed by and construed in accordance with the laws of Illinois without giving effect to any conflict of law provisions that would cause the application of the laws of any jurisdiction other than Illinois.

**10.10.    *Fees and Expenses*.** Except as otherwise expressly set forth herein, each Party shall pay all fees, costs, and expenses incurred in connection with the Action, including fees, costs, and expenses incident to his or its negotiation, preparation, or compliance with this Agreement, and

7070898v7

including any fees, expenses, and disbursements of its counsel, accountants, and other advisors. Nothing in this Agreement shall require Defendant to pay any monies other than as expressly provided herein.

**10.11.** ***Communication With Plan Participants.*** Nothing in this Agreement or Settlement shall prevent or inhibit the Defendant Released Parties' ability to communicate with Plan participants or Class Members.

**10.12.** ***Retention of Jurisdiction.*** The Parties shall request that the Court retain jurisdiction of this matter after the Effective Date and enter such orders as necessary or appropriate to effectuate the terms of the Agreement.

**IN WITNESS WHEREOF,** the Parties, Class Counsel, and Defendant's Counsel named below have signed this Agreement on the dates shown below and, by signing below, the Parties, Class Counsel, and Defendant's Counsel attest that this Agreement is executed voluntarily and of their own free will:

DATED: November **2**___, 2022

*Calvin McCutchan*
Calvin McCutchan

DATED: November _____, 2022

Infinera Optical Networks, Inc. (formerly known as Coriant Operations, Inc.)

By: _____

Title: _____

28

DocuSign Envelope ID: 1665DC82-9C80-43D2-91B6-041531414457

including any fees, expenses, and disbursements of its counsel, accountants, and other advisors. Nothing in this Agreement shall require Defendant to pay any monies other than as expressly provided herein.

     **10.11.** ***Communication With Plan Participants.***   Nothing in this Agreement or Settlement shall prevent or inhibit the Defendant Released Parties' ability to communicate with Plan participants or Class Members.

     **10.12.** ***Retention of Jurisdiction.***   The Parties shall request that the Court retain jurisdiction of this matter after the Effective Date and enter such orders as necessary or appropriate to effectuate the terms of the Agreement.

     **IN WITNESS WHEREOF,** the Parties, Class Counsel, and Defendant's Counsel named below have signed this Agreement on the dates shown below and, by signing below, the Parties, Class Counsel, and Defendant's Counsel attest that this Agreement is executed voluntarily and of their own free will:

DATED: November _____, 2022

_____
Calvin McCutchan

DATED: November 2, 2022

_____
Infinera Optical Networks, Inc. (formerly known as Coriant Operations, Inc.)

David L. Teichmann
Secretary

**APPROVED AS TO FORM:**

DATED: November 2, 2022

R. Bradford Huss
bhuss@truckerhuss.com
Clarissa A. Kang
ckang@truckerhuss.com
Dylan D. Rudolph
drudolph@truckerhuss.com
TRUCKER ✦ HUSS
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, CA 94105

*Attorneys for Coriant Operations, Inc. (now
known as Infinera Optical Networks, Inc.)*

DATED: November ____, 2022

Hugh D. Berkson
hdb@mccarthylebit.com
McCARTHY, LEBIT, CRYSTAL
& LIFFMAN CO., L.P.A.
1111 Superior Avenue East, Suite 2700
Cleveland, OH 44114
*Attorneys for Plaintiff Calvin McCutchan*

DATED: November ____, 2022

Alan L. Rosca
arosca@rscounsel.law
ROSCA SCARLATO LLC
23250 Chagrin Blvd., Suite 100
Beachwood, OH 44122

Paul Scarlato
pscarlato@rscounsel.law
ROSCA SCARLATO LLC
161 Washington St., Suite 1025
Conshohocken, PA 19428

*Attorneys for Plaintiff Calvin McCutchan*

7070898v7

**APPROVED AS TO FORM:**

DATED: November _____, 2022

_____
R. Bradford Huss
bhuss@truckerhuss.com
Clarissa A. Kang
ckang@truckerhuss.com
Dylan D. Rudolph
drudolph@truckerhuss.com
TRUCKER ✦ HUSS
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, CA 94105

*Attorneys for Coriant Operations, Inc. (now known as Infinera Optical Networks, Inc.)*

DATED: November _____, 2022

_____
Hugh D. Berkson
hdb@mccarthylebit.com
McCARTHY, LEBIT, CRYSTAL
& LIFFMAN CO., L.P.A.
1111 Superior Avenue East, Suite 2700
Cleveland, OH 44114
*Attorneys for Plaintiff Calvin McCutchan*

DATED: November 2 _____, 2022

_____
Alan L. Rosca
arosca@rscounsel.law
ROSCA SCARLATO LLC
23250 Chagrin Blvd., Suite 100
Beachwood, OH 44122

Paul Scarlato
pscarlato@rscounsel.law
ROSCA SCARLATO LLC
161 Washington St., Suite 1025
Conshohocken, PA 19428

*Attorneys for Plaintiff Calvin McCutchan*

7070898v7

**APPROVED AS TO FORM:**

DATED: November _____, 2022

_____
R. Bradford Huss
bhuss@truckerhuss.com
Clarissa A. Kang
ckang@truckerhuss.com
Dylan D. Rudolph
drudolph@truckerhuss.com
TRUCKER ✦ HUSS
A Professional Corporation
135 Main Street, 9th Floor
San Francisco, CA 94105

*Attorneys for Coriant Operations, Inc. (now known as Infinera Optical Networks, Inc.)*

DATED: November 2, 2022

_____
Hugh D. Berkson
hdb@mccarthylebit.com
McCARTHY, LEBIT, CRYSTAL
& LIFFMAN CO., L.P.A.
1111 Superior Avenue East, Suite 2700
Cleveland, OH 44114
*Attorneys for Plaintiff Calvin McCutchan*

DATED: November 2, 2022

_____
Alan L. Rosca
arosca@rscounsel.law
ROSCA SCARLATO LLC
23250 Chagrin Blvd., Suite 100
Beachwood, OH 44122

Paul Scarlato
pscarlato@rscounsel.law
ROSCA SCARLATO LLC
161 Washington St., Suite 1025
Conshohocken, PA 19428

*Attorneys for Plaintiff Calvin McCutchan*

29

7070898v7