# EXHIBIT A-1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

CALVIN McCUTCHAN

7687 Park Avenue

Terrell, TX 75160

        Plaintiff,

   vs.

CORIANT OPERATIONS, INC.

1415 West Diehl Road

Naperville, IL 60563

   and

INFINERA CORPORATION

(as Successor-in-Interest to Coriant

Operations, Inc.)

140 Caspian Court

Sunnyvale, CA 94089

   and

CORIANT 401(k) PLAN

1415 W. Diehl Road

Naperville, IL 60563

   and

J. DOE 1 (CORIANT 401K PLAN

TRUSTEE)

(Name and address unknown)

   and

J. DOE 2-10 (MEMBERS OF CORIANT

401K PLAN ADMINISTRATIVE

COMMITTEE)

(Names and addresses unknown)

   and

CASE NO.: 1:20-CV-00561 (CPK)

JUDGE: CHARLES P. KOCORAS

**PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

{01448010-3}

J. DOE 11-20 (MEMBERS OF CORIANT

401K PLAN INVESTMENT

COMMITTEE)

(Names and addresses unknown)

Defendants.

Plaintiff, Calvin McCutchan, by and through the undersigned counsel, hereby submits, pursuant to Federal Rule of Civil Procedure 15, this First Amended Class Action Complaint, individually and on behalf of all others similarly situated, against Defendants, Coriant Operations, Inc., Infinera Corporation, the Coriant 401(k) Plan, and J. Does 1-20, and states and alleges as follows:

## NATURE OF THE ACTION

1. This ERISA matter arises out of Defendants' failure, in breach of their duties, to timely and reasonably notify Plaintiffs and the putative class members of the termination of a particular investment option available within the Coriant 401(k) plan (the "Plan") within sufficient time to liquidate that holding and avoid losses arising from its termination.

2. Plaintiff and the putative class members were all employees of Defendant Coriant and participants in Coriant's 401k Plan. Defendants, aside from the Coriant 401(k) Plan itself, were fiduciaries who owed duties to all plan participants as more fully described below.

2

3.      The Coriant 401(k) Plan, held by Prudential Financial, Inc. ("Prudential"), offered Plaintiff and the putative class an investment option known as Gibraltar Guaranteed Fund ("GFF").

4.      GFF was sponsored and managed by Prudential.

5.      As Defendants knew, pursuant to the Coriant 401(k) Plan agreement with Prudential, in the event that the 401(k) Plan was terminated, as it might be, for example, in the context of a merger or acquisition, Prudential had the right to immediately terminate the Plan participants' investments in GFF and pay the participants the ***market value*** of their GFF holdings upon termination.

6.      By contrast, ***prior*** to such plan termination, Plan participants had the right to liquidate their GFF holdings at ***book value***, which was significantly higher than the ***market value***, as Defendants knew.

7.      Defendant Coriant agreed to be acquired by Defendant Infinera. Upon entering into an acquisition agreement, Defendant Coriant agreed to terminate the Plan, which termination – as Defendants knew – could (and actually did) trigger the liquidation by Prudential of the GFF investment on unfavorable terms and the transfer of the GFF investment proceeds to a money-market fund with modest returns.

8.      Instead of timely notifying Plaintiff and the other Plan participants of the impending Plan termination and advising them of the opportunity to liquidate  their GFF holdings in the Coriant 401(k) plan prior to such termination they could avoid losses, Defendants waited to send such notification until it was too late for the Plan participants to liquidate their GFF holdings and avoid losses.

9.      When they finally sent notification to the Plan participants, the notification was not adequate because Defendants improperly sent it via (1) an email blast that was

{01448010-3}

apparently caught in spam filters and never made it to Plaintiffs and the putative class members' inboxes; (2) an email configured without a "reply receipt" to confirm delivery of the email; and (3) a letter that arrived too late to allow Plaintiff and the putative class members to take action and avoid losses on their GFF investments.

10.     Through their failure to timely and adequately notify Plaintiff and the other Coriant 401(k) plan participants regarding the 401(k) Plan's termination, Defendants breached their fiduciary duties and the applicable ERISA rules and regulations. Plaintiff and the putative class members suffered losses as a result.

11.     Plaintiff's repeated attempts in writing to resolve this matter prior to filing this case were met with deflection, obfuscation, and rejection, making it clear that his only remaining choice was to seek judicial remedies through this action.

### PARTIES

12.     Calvin McCutchan ("McCutchan" or "Plaintiff") is an individual who is now, and was at all relevant times mentioned in this Complaint, a citizen of the State of Texas.

13.     Coriant Operations, Inc. ("Coriant") is a corporation organized under the laws of the state of Delaware with its principal place of business located in Naperville, IL.

14.     Coriant 401(K) Plan is the employee benefit retirement plan sponsored by Defendant Coriant Operations, Inc., and has as its principal place of operations in Naperville, IL.

15.     Infinera Corporation ("Infinera") is a corporation organized under the laws of the state of Delaware with its principal place of business located in Sunnyvale, CA.

16.     J. Doe 1, whose identity and address is currently not known to Plaintiff but is known to the named Defendants, was at all relevant times Defendant Coriant's 401k

Plan Trustee. Plaintiff anticipates that Defendant J. Doe 1's identity and contact information will be obtained in the course of discovery.

17.    J. Does 2-10, whose identities and addresses are currently not known to Plaintiff, were at all relevant times members of Defendant Coriant's 401k Plan Administrative Committee. Plaintiff anticipates that Defendants J. Doe 2-10's identities and contact information will be obtained in the course of discovery.

18.    J. Does 11-20, whose identities and addresses are currently not known to Plaintiff, were at all relevant times members of Defendant Coriant's 401k Plan Investment Committee. Plaintiff anticipates that Defendants J. Doe 11-20's identities and contact information will be obtained in the course of discovery.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because there are 100 or more class members, at least one of whom is a citizen of a state different from at least one Defendant, and the aggregate amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

20.    Subject matter jurisdiction is further conferred upon this Court pursuant to 29 U.S.C. § 1132(e)(1) insofar as Plaintiff's claims arise under 29 U.S.C. § 1132(a)(1)(B) and (a)(2).

21.    Venue is proper in this District under 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2)because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS COMMON TO THE CLASS

5

22.     At all relevant times herein, Plaintiff and all others similarly situated were participants in the Coriant 401(k) Plan.

23.     Coriant was the sponsor of, and provided its employees the opportunity to participate in, a 401(k) plan called the Coriant 401(k) Plan.

24.     Prudential was the Investment Manager for the Plan. Prudential offered Plan participants an investment option known as the Gibraltar Guaranteed Fund (GGF).

25.     As Defendants knew, under the terms agreed between Prudential and the Plan, in the event that the *Plan participants* were to liquidate their GGF investment, they were to receive the book value of the GGF investment as of the date of such termination.

26.     By contrast, as Defendants knew, under the terms agreed between Prudential and the Plan, in the event that Prudential was to terminate the Plan participants' GGF investments, the Plan participants were to receive the market value of the GGF investment as of the date of such termination, which was substantially lower than the book value.

27.     As Defendants knew, under the terms agreed between Prudential and the Plan, Prudential had the ability to terminate the Plan participants' participation in GGF in the event the Plan was terminated.

28.     Defendants also knew that, were Prudential to terminate the Plan participants' GGF investments – as opposed to the Plan participants liquidating their GGF investments themselves prior to such termination – the Plan participants would likely suffer losses.

29.     Plaintiff, and all other Plan participants situated similarly to Plaintiff, participated in the Plan by transferring and investing money into the GGF.

6

30.     On July 23, 2018, Infinera publicly announced its intention to acquire Coriant. The acquisition of Coriant's parent company by Infinera was completed on or about October 1, 2018, and Infinera became the owner of 100% of Coriant's shares.

31.     Because Infinera maintained its own 401(k) Plan, it required Coriant to terminate the Plan prior to the closing of the acquisition.

32.     Pursuant to its acquisition agreement with Infinera, Coriant terminated the Plan on September 30, 2018.

33.     On a date currently unknown to Plaintiff, Coriant sent Prudential notice of termination of the Plan.

34.     Defendants did not notify the Plan participants before sending such notice of termination to Prudential, which would have given Plan participants an opportunity to liquidate their GGF investments at book value before Prudential could terminate their GGF participation and pay them the lower, market value for their GGF holdings.

35.     Defendants failed to timely notify the Plan participants of the termination of the Plan despite knowing that the Plan participants would likely suffer losses if they were unable to liquidate their GGF holdings before Prudential terminated their GGF investments.

36.     Following its receipt of the notice of termination of the Plan, on a date currently unknown to Plaintiff, Prudential notified Coriant of its election to terminate the GGF investment.

37.     On October 10, 2018, a Wednesday, Coriant belatedly purported to send both a blast email and a letter to all participants of the Plan to notify them that: (1) the Plan had been terminated on September 30, 2018, and (2) in connection with the

{01448010-3}

termination, Prudential would be terminating the Plan's participation in the GGF on October 15, 2019, a Monday.

38.     Given the manner in which Coriant sent the blast email, upon information and belief, most emails were caught in spam filters and never arrived in the Plan participants' email inboxes.

39.     Further, the letter was sent too late for most Plan participants to timely receive it and act on it to avoid incurring losses.

40.     The email and letters also stated that each participant's interest in GGF would be transferred to the Vanguard Money Market Fund on October 16, 2018, and that such transfers likely would result in losses. The email and letters explained:

> Since Prudential has exercised its right to terminate the Plan's participation in the GGF, under the terms of the Plan's contract with Prudential, amounts transferred will be calculated based on market value rather than book value, which likely will result in a loss. This is different from how Participant-elected transfers or distributions under the GGF are treated. Participant-elected transfers and distributions typically are made at book value. As of October 8, 2018, the market value adjustment would have resulted in a loss of approximately 4%. We cannot predict the actual market value at the termination date.

41.     Plaintiff never received an email in his inbox, or a letter via mail in time to take action and avoid suffering losses as a result of Prudential's termination of the GGF investment, and had no notice of the impending termination of the GGF investment or the deadline for making an elective transfer or distribution of his interest in GGF, before such deadline passed.

42.     Upon information and belief, Plan participants who transferred their GGF investments between October 10 and October 15, 2018, via Participant-elected transfers and distributions enjoyed the benefit of having their full investments in GGF transferred at book value rather than market value.

8

43. Plaintiff and all other similarly situated Plan participants who did not transfer their GGF investments via Participant-elected transfer and distribution suffered a loss. Their shares in GGF were liquidated at market value and the resulting funds were transferred to Vanguard and invested in the Vanguard Money Market Fund.

44. A plan fiduciary is required by 29 U.S.C. § 1104(a)(1), *inter alia*, to discharge his, her, or its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries, with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

45. Notwithstanding its July 23, 2018 announcement that it agreed to be acquired by Infinera, Coriant did not even attempt to notify Plan participants of its intent to terminate the Plan until October 10, 2018, two and a half months after the announcement and ten days after Coriant had terminated the Plan on September 30, 2018, and did not give sufficient time for Plan participants to make an informed decision and be able to liquidate their GGF investment and avoid suffering losses.

46. By their actions and omission in failing to properly notify Plaintiff and other Plan participants as required, Defendants breached their duties to all Plan participants.

47. Each of the Defendants was also a co-fiduciary liable for the breaches committed by each other fiduciary under 29 U.S.C. § 1105 because each (a) knowingly participated in, or knowingly undertook to conceal, an act or omission of one or more other fiduciaries, knowing such act or omission was a breach; (b) enabled one or more other fiduciaries to commit a fiduciary breach by failing to comply with his, her, or its own

9

fiduciary duties in the administration of the specific responsibilities giving rise to status as a fiduciary; and/or (c) knew of a breach by one or more other fiduciaries but failed to make reasonable efforts under the circumstances to remedy the breach.

48.     Under 29 U.S.C. § 1109, *inter alia*, any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets.

49.     A Plan participant is permitted under 29 U.S.C. § 1132(a)(1)(B) to bring suit under ERISA to recover lost benefits.

50.     A Plan participant is permitted under 29 U.S.C. § 1132(a)(2) to bring suit under ERISA to recover losses suffered as a result of the Plan fiduciaries' beach of their fiduciary duties.

51.     As a consequence of Defendants' conduct, including breaches of fiduciary duty, Plaintiff suffered loss of benefits and damages.

52.     A plan administrator has a fiduciary obligation to monitor and select the plan investments.

53.     The fiduciary obligation of the plan administrator for monitoring and selecting investments naturally extends to the provision of notice concerning changes to the investment options made available under the plan.

54.     Pursuant to ERISA, common law, and the Plan's summary plan description, the Plan administrator is obligated to notify plan participants of changes in the Plan's provisions and give Plan participants a reasonable opportunity after such notice to take appropriate action.

10

55.     Coriant failed to notify the Plaintiff of the drastic changes to the Plan, including Prudential's intention to terminate the Plan's participation in the GGF, which – as Defendants knew – would result in all GGF investments to default transfer to the Vanguard Money Market Fund at a loss since the transfer would be made at market value instead of book value.

56.     Defendants breached their contractual, common law, and fiduciary duties to Plaintiff and the other Plan participants by failing to notify them of the foregoing changes to their GGF investments.

57.     Plaintiff was not required to exhaust his administrative remedies prior to pursuing a judicial remedy because the Plan purportedly was terminated and had ceased to exist as of September 30, 2018, eleven days prior to Coriant's effort to notify Plan participants about the termination. Moreover, the Plan was in violation of 29 C.F.R. 2660.503-b for failure to "maintain" reasonable claims procedures, in that its communications with Plaintiff regarding the GGF termination issue did not describe any process for requesting or pursuing an administrative appeal subsequent to Plan termination.

58.     Nonetheless, Plaintiff, to no avail, diligently made multiple attempts to resolve this dispute through repeated communications with Debra Ragusa, Coriant's former Senior Global Benefits Manager.

59.     In response to Plaintiff's repeated attempts to seek non-judicial remedies, Coriant repeatedly declined to admit any fault or liability, engaged in systematic obfuscation, advised him to "talk to Prudential," misleadingly characterized Plaintiff's rights as a Plan participant and Coriant's own responsibilities, and otherwise failed to remedy the results of its conduct, making it clear that any further efforts to resolve this

11

matter without resorting to judicial action would be futile. None of Ms. Ragusa's responses to Plaintiff's pleas included a citation of the Plan's provisions upon which Coriant was relying in taking its position, nor did she advise Plaintiff of the procedures by which he could appeal its refusal to provide the benefits to which he was entitled.

60.     The deprivation of Plaintiff's benefits did not arise from an interpretation of the Plan's language and this Court will therefore review the matter *de* novo, rendering Plaintiff's pursuit of further administrative remedies futile.

61.     Thus, Plaintiff is left with no choice but to pursue judicial remedies against Defendants through this action.

## CLASS ACTION ALLEGATIONS

62.     Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated as members of the proposed Class. The requirements of Fed. R. Civ. P. 23, subparts 23(a) and 23(b), are met with respect to the Class, which is defined as follows:

> All participants in the Plan who experienced a loss due to liquidation at market value of their GGF investments, any beneficiary of a deceased person who was such a participant in the Plan, and any alternate payee in the case of a person who was such a participant in the Plan and whose account in the Plan was subject to a qualified domestic relations order ("QDRO"). Excluded from the Class are the current officers and directors of Defendant Infinera Optical Networks, Inc. (formerly known as Coriant Operations, Inc.), and all individuals who were members of the Plan's Investment Committee or Administrative Committee at any time from July 23, 2018, through October 15, 2018.

63.     Excluded from the Class are the officers and directors of the corporate Defendants, members of their immediate families, the heirs, successors, or assigns of any

of the foregoing, and any judge or judicial officer who might hear any aspect of this matter, and his or her law clerks.

64.     Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

65.     Numerosity/Impracticability of Joinder: The members of the Class are so numerous that joinder of all members would be impracticable. Although the exact number of Class members is unknown at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes that there were, during the relevant time period, somewhere between 1,984 and 1,326 participants in the Plan, a substantial number of whom had some or all of their account balances invested in GGF.

66.     Commonality and Predominance: There are common questions of law and fact that predominate over any questions affecting only individual members of the Class, including the following: whether Class members suffered losses in GGF due to liquidation of their interests at market value rather than book value; whether Defendants were fiduciaries of the Plan during the relevant time period; whether Defendants breached their common law, contractual, and/or fiduciary duties by failing to provide adequate notice of GGF termination; whether Class members were deprived of a Plan benefit when they were deprived of the ability to liquidate the GGF at book, rather than market, value; whether the Class members losses were caused by such breaches; and whether such losses should be allocated to Class members' individual Plan accounts.

67.     Typicality: Plaintiff is a member of the Class and his claims are typical of the claims of the members of the Class, as Plaintiff and all members of the Class sustained injury arising out of Defendants' wrongful conduct in breaching their contractual, common law, and fiduciary duties and violating ERISA as complained of herein.

68.     Adequacy: Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class. Plaintiff has no interest antagonistic to or in conflict with those of the other Class members. Plaintiff is represented by attorneys who are experienced in ERISA and class action litigation.

69.     Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically infeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Further, individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation could also result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and the court system because of the multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Defendants have acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate to provide monetary relief, final injunctive relief, and other equitable relief to the Class as a whole.

## FIRST CLAIM FOR RELIEF

### Claim against the Plan for the Recovery of Benefits
### [29 U.S.C.S. § 1132(a)(1)(B)]

14

70. Plaintiff incorporates Paragraphs 1 through 69 above as if fully set forth herein.

71. The Plan's summary plan description provided in relevant part (emphasis added):

> You direct how the contributions made to your Account are invested. You may direct that contributions be invested in any of the funds made available to you under the Plan. The Plan Administrator will provide you with a description of the different investment funds available. *New investment funds may be added and existing funds changed. The Plan Administrator will update the description of the available funds to reflect any changes.*

72. The Plan Administrator failed to provide the requisite timely update reflecting a key change: the termination of the GGF investment option.

73. The failure to provide notice of the GGF termination with time sufficient for Plaintiff and similarly situated Plan participants to make an informed decision, and therefore deprived them of the opportunity to liquidate their GGF holdings at book value, which was greater than the market value Plaintiff and similarly situated Plan participants received.

74. Plaintiff and similarly situated Plan participants therefore lost a benefit due them under the Plan.

75. Plaintiff and the Class members are entitled to bring claim pursuant to 29 U.S.C.S. § 1132(a)(2) to recover benefits due them under the terms of the Plan and to enforce their rights under the terms of the Plan.

76. Plaintiff's pursuit of further administrative remedy would be futile insofar as the deprivation of benefits was not derived from the Administrator's interpretation of the Plan's language: the Court will review the matter *de novo*.

15

77.     Plaintiff is deemed to have already exhausted his administrative remedies available under the Plan as the Plain has failed to follow claims procedures consistent with the requirements of 29 C.F.R. § 2560.503-1.  As a consequence of the Plan's failures, Plaintiff suffered a loss in the value of his retirement plan account and is due the benefits wrongfully denied him.

## SECOND CLAIM FOR RELIEF

**Claim for Breach of Fiduciary Duty Against All Defendants other than the Plan:**
**[29 U.S.C.S. § 1132(a)(2), 29 U.S.C.S. § 1109(a)]**

78.     Plaintiff incorporates Paragraphs 1 through 69 above, as if fully set forth herein.

79.     The Plan sponsor (Coriant), the Plan's trustee (J. Doe 1), members of the Plan's Administrative Committee (J. Does 2-10), and members of the Plan's Investment Committee (J. Does 11-20) had fiduciary obligations to administer, monitor, and select the Plan's investments.

80.     Said fiduciary obligations arise from ERISA and common law surrounding ERISA.

81.     The obligations of these fiduciaries extended to the provision of notice concerning changes in the Plan, including any changes to the investment options made available.

82.     These fiduciaries were required to notify Plan participants of changes in the Plan's provisions and to give the Plan participants a reasonable opportunity after such notice to take appropriate action

83.     Coriant and the other fiduciaries failed to adequately notify the Plaintiff and other Plan participants of the drastic changes to the Plan, including Prudential's intention

{01448010-3}

to terminate the Plan's participation in the GGF, which would result in default liquidations of GGF investments, and transfers to the Vanguard Money Market Fund, at a market-value loss.

84.     Excepting the Plan itself, each of the other Defendants was also a co-fiduciary liable for the breaches committed by each other fiduciary under 29 U.S.C. § 1105, because each (a) knowingly participated in, or knowingly undertook to conceal, an act or omission of one or more other fiduciaries, knowing such act or omission was a breach; (b) enabled one or more other fiduciaries to commit a fiduciary breach by failing to comply with his, her, or its own fiduciary duties in the administration of the specific responsibilities giving rise to status as a fiduciary; and/or (c) knew of a breach by one or more other fiduciaries but failed to make reasonable efforts under the circumstances to remedy the breach.

85.     29 U.S.C. § 1109 provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore the plan any profits the fiduciary made through use of the plan's assets.

86.     The John Doe, Coriant, and Infinera Defendants breached their fiduciary duty to Plaintiff and those Plan participants similarly situated to Plaintiff by failing to adequately notify them of the foregoing changes to their GGF investments and failing to provide adequate opportunity for them to take appropriate action.

87.     As a consequence of Defendants breaches of fiduciary duty, Plaintiff and other Plan participants suffered a loss in the value of their retirement accounts and are entitled to recover the difference between the market value they received upon their GGF

17

fund liquidations and the book value they would have received had they been given the opportunity to liquidate the GGF holding before the fund was terminated from the Plan.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court:

A.　Certify this action as a class action pursuant to Fed. R. Civ. P. 23, appoint Plaintiff as class representative, and appoint Plaintiff's counsel as counsel for the class;

B.　Declare that the Defendants, and each of them, have breached their duties to the above-mentioned Plan participants and beneficiaries;

C.　Issue an order Compelling the Defendants, and each of them, to make good to the Plan participants for all losses resulting from these breaches, including loss of book value of GGF that would have been avoided had sufficient warning and notification been provided as required;

D.　Award such other equitable or remedial relief as may be appropriate, including the permanent removal of the Defendants from any positions of trust with respect to the Plan and the appointment of independent fiduciaries to administer the Plan;

E.　Enjoin Defendants, and each of them, from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

F.　Order Defendants or their successor fiduciaries to allocate the Plan's recoveries to the accounts of all Plan participants who had experienced a loss of GGF value as a result of Defendants' breaches;

G.　Award attorney's fees and costs pursuant to 29 U.S.C. § 1132(g) and/or the Common Fund doctrine; and

H.　Award such other further relief as this Court deems equitable and just.

DATED: November 3, 2022.

/s/ Hugh D. Berkson
Hugh D. Berkson (*admitted pro hac vice*)
MCCARTHY, LEBIT, CRYSTAL
& LIFFMAN CO., L.P.A.
101 West Prospect Avenue
1800 Midland Building
Cleveland, OH  44115
Telephone  (216) 696-1422
Facsimile:  (216) 696-1210
Email:   hdb@mccarthylebit.com

Alan L. Rosca (*admitted pro hac vice*)
ROSCA SCARLATO, LLC
23250 Chagrin Blvd., Suite 100
Beachwood, OH 44122
Telephone: (484) 342-0700
Email: arosca@rscounsel.law

***Counsel for Plaintiff Calvin McCutchan***

19

## <u>ENDORSEMENT FOR A JURY DEMAND</u>

Plaintiff demands a trial by jury of all issues so triable.

Dated: November 3, 2022.

Respectfully submitted,

*/s/ Hugh D. Berkson*
Hugh D. Berkson (OH 0063997)
MCCARTHY, LEBIT, CRYSTAL
& LIFFMAN CO., L.P.A.
101 West Prospect Avenue
1800 Midland Building
Cleveland, OH 44115
Tel: (216) 696-1422
Facsimile: (216) 696-1210
Email:      hdb@mccarthylebit.com

***Counsel for Plaintiff Calvin
McCutchan***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd, day of November 2022, a copy of the foregoing was filed electronically with the Court. Notice of this filing will be sent to all parties registered for electronic service by operation of the Court's electronic filing system. The parties may access the filing through the Court's system.

Respectfully submitted,

*/s/ Hugh D. Berkson*
Hugh D. Berkson (OH 0063997)